UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARIANN PERNA,
    Plaintiff,

    v.                                    CIVIL ACTION NO.
                                          17-11643-IT
JOSE F. MARTINEZ, MASSACHUSETTS
TRIAL COURT DEPARTMENT, NEW
HAMPSHIRE DEPARTMENT OF
CORRECTIONS, AND STRAFFORD
COUNTY HOUSE OF CORRECTIONS,
    Defendants.

**REPORT AND RECOMMENDATION RE:**
**DEFENDANT STRAFFORD COUNTY HOUSE OF CORRECTIONS' MOTION TO**
**DISMISS (DOCKET ENTRY # 12); DEFENDANT NEW HAMPSHIRE DEPARTMENT**
**OF CORRECTIONS' MOTION TO DISMISS (DOCKET ENTRY # 16); DEFENDANT**
**MASSACHUSETTS TRIAL COURT DEPARTMENT'S MOTION TO DISMISS**
**(DOCKET ENTRY # 18)**

**MEMORANDUM AND ORDER RE:**
**PLAINTIFF MARIANN PERNA'S MOTION TO AMEND THE COMPLAINT**
**(DOCKET ENTRY # 53)**

**July 5, 2018**

**BOWLER, U.S.M.J.**

Pending before this court are a motion to dismiss filed by

defendant Strafford County House of Corrections ("SCHOC"), a

motion to dismiss filed by defendant New Hampshire Department of

Corrections ("NHDOC"), and a motion to dismiss filed by

defendant Massachusetts Trial Court Department ("MTCD").[1]

(Docket Entry ## 12, 16, 18).  Plaintiff Mariann Perna

---

[1] SCHOC, NHDOC, and MTCD are collectively referred to as
"defendants."  SCHOC and NHDOC are located in New Hampshire.
(Docket Entry # 1, ¶¶ 3, 4).

("plaintiff") opposes the motions.  (Docket Entry ## 29, 38,
39).  Also pending before this court is a motion to amend the
complaint filed by plaintiff (Docket Entry # 53), which
defendants oppose.  (Docket Entry ## 54, 55, 57).  After
conducting a hearing on April 10, 2018, this court took the
motions (Docket Entry ## 12, 16, 18, 53) under advisement.

PROCEDURAL BACKGROUND

Neither the original complaint nor the proposed amended
complaint seeks injunctive relief.  In seeking compensatory and
punitive damages as well as attorney's fees, the complaint sets
out causes of action for "[c]ruel and [a]busive [t]reatment" in
violation of the Eighth Amendment under 42 U.S.C. § 1983
("section 1983"); violation of substantive due process under the
Fourteenth Amendment pursuant to section 1983; violation of the
Equal Protection Clause under the Fourteenth Amendment under
section 1983; and negligence under the Massachusetts Tort Claims
Act, Massachusetts General Laws chapter 258 ("MTCA") as to MTCD,
and New Hampshire Revised Statutes Annotated section 541-B
("section 541-B") as to SCHOC and NHDOC.  (Docket Entry # 1).

On March 29, 2018, plaintiff filed the motion to amend the
complaint.  (Docket Entry # 53).  The proposed changes to
the complaint include the following:  (1) paragraphs nine and
ten are supplemented to provide additional factual information
relative to plaintiff's reports of sexual assaults made to NHDOC

2

and SCHOC representatives in 2009; (2) a document is added as an exhibit, which consists of an "Information Report" setting out plaintiff's description of the assault to SCHOC Officer Jake Collins ("Collins") and SCHOC program counselor Quinn Brackett ("Brackett"); and (3) paragraph 16 is added to provide factual information that defendant Jose F. Martinez ("Martinez") was charged with rape in Massachusetts in 2014 and, in the spring of 2017, Martinez admitted to having sexual contact with plaintiff in 2014 while she was being held in custody at the Massachusetts District Court Department (Lawrence Division) ("Lawrence District Court"). (Docket Entry ## 53-1, 53-2). The proposed amended complaint does not change the causes of action asserted in the original complaint.

STANDARD OF REVIEW

To survive a Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") motion to dismiss, the complaint "must contain 'enough facts to state a claim to relief that is plausible on its face'" even if actual proof of the facts is improbable. Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007); Miller v. Town of Wenham Massachusetts, 833 F.3d 46, 51 (1st Cir. 2016). The "standard is not akin to a probability requirement, but [instead] asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted); see also

Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not show[n] that the pleader is entitled to relief." Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011) (internal quotation marks and citations omitted).

Taking the facts in the complaint as true, the complaint "must state a plausible, not a merely conceivable, case for relief." Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico, 628 F.3d 25, 29 (1st Cir. 2010).  Construing the "well-pleaded facts in the light most favorable to the plaintiff[,] . . . [the] factual allegations must be enough to raise a right to relief above the speculative level." Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010) (internal quotation marks and citations omitted).  Legal conclusions in a complaint are not credited.  See In re Ariad Pharmacy, Inc. Securities Litigation, 842 F.3d 744, 750 (1st Cir. 2016); see also Dixon v. Shamrock Financial Corp., 522 F.3d 76, 79 (1st Cir. 2008) (rejecting unsupported conclusions or interpretations of law when reviewing Rule 12(b)(6) dismissal).

Although motions to amend a complaint pursuant to Fed. R. Civ. P. 15(a) ("Rule 15(a)") are generally granted, the court has discretion in deciding whether to allow or deny an amendment.  See Foman v. Davis, 371 U.S. 178, 182 (1962).  A

court may deny a motion to amend because of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure[s] to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Id. "'Futility' means that the complaint as amended, would fail to state a claim upon which relief could be granted." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 2009). "In assessing futility, the district court must apply the standard which applies to motions to dismiss under Rule 12(b)(6)." Adorno v. Crowley Towing And Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006).

NHDOC seeks to dismiss the complaint based on Eleventh Amendment sovereign immunity pursuant to Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)").[2] (Docket Entry # 16) (Docket Entry # 17, p. 5). "Rule 12(b)(1) is '[t]he proper vehicle for challenging a court's subject-matter jurisdiction,' including on the basis of sovereign immunity." Bradley v. Cruz, 13-CV-12927-IT, 2017 WL 3443212, at *1 (D. Mass. Aug. 10, 2017) (quoting

---

[2] NHDOC seeks dismissal on a number of grounds, including personal jurisdiction under Fed. R. Civ. P. 12(b)(2) ("Rule 12(b)(2)"), and failure to state a claim under Rule 12(b)(6). Because the Rule 12(b)(1) dismissal is warranted, it is not necessary to recount the Rule 12(b)(2) standard.

<u>Valentin v. Hospital Bella Vista</u>, 254 F.3d 358, 362 (1st Cir. 2001)).

When a district court considers a Rule 12(b)(1) motion, it credits the plaintiff's well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor.  <u>Merlonghi v. U.S.</u>, 620 F.3d 50, 54 (1st Cir. 2010) (citing <u>Valentin v. Hospital Bella Vista</u>, 254 F.3d at 363); <u>Sanchez ex rel. D.R.-S. v. U.S.</u>, 671 F.3d 86, 92 (1st Cir. 2012) ("credit[ing] the plaintiff's well-pled factual allegations and draw[ing] all reasonable inferences in the plaintiff's favor" under Rule 12(b)(1)).  "The district court may also 'consider whatever evidence has been submitted, such as the depositions and exhibits submitted.'"  <u>Merlonghi v. U.S.</u>, 620 F.3d at 54 (quoting <u>Aversa v. United States</u>, 99 F.3d 1200, 1210 (1st Cir. 1996)).  Because neither NDHOC nor plaintiff provides additional evidence, the Rule 12(b)(1) record tracks the Rule 12(b)(6) record.  <u>See also</u> <u>Claudomir v. Commonwealth of Massachusetts</u>, Civil Action No. 15-CV-12867-IT, 2016 WL 492754, at *1, 3-4 (D. Mass. Feb. 8, 2016) ("[i]n ruling on a motion to dismiss, whether for lack of jurisdiction or for failure to state a claim, the court must accept the plaintiff's well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor").

"A party claiming sovereign status bears the burden of demonstrating that it is an arm of the state." U.S. v. University of Massachusetts, Worcester, 812 F.3d 35, 40 (1st Cir. 2016), cert. denied sub nom., U.S. and Massachusetts ex rel. Willette v. U. of Massachusetts, Worcester, 137 S. Ct. 617 (2017); accord Grajales v. Puerto Rico Ports Auth., 831 F.3d 11, 15 (1st Cir. 2016) (defendant "PRPA bears the burden of proving that it is an 'arm'"). "It is the plaintiff's burden to identify a waiver of sovereign immunity, and if he is unable to do so, his claim must be dismissed on jurisdictional grounds." Soares v. Massachusetts Dept. of Youth Services, Civil Action No. 12-10573-DJC, 2013 WL 5211556, at *4 (D. Mass. Sept. 12, 2013); Hanley v. U.S., No. 94-1315, 1994 WL 723678, at *2 (1st Cir. Oct. 5, 1994) ("plaintiff has the burden of showing a waiver of sovereign immunity") (per curiam); Tierney v. Town of Framingham, 292 F. Supp. 3d 534, 542 (D. Mass. 2018) (plaintiff bears burden of proving "'waiver of sovereign immunity'"); Villeneuve v. State of Connecticut, Civil No. 09-13-P-S, 2009 WL 2022009, at *6 (D. Me. July 13, 2009) ("plaintiff has the burden of showing a waiver of sovereign immunity"); see Neo Gen Screening, Inc. v. New Eng. Newborn Screening Program, 187 F.3d 24, 26-27 (1st Cir. 1999) (not addressing waiver because "Neo Gen has not argued . . . that there was any waiver of Eleventh Amendment immunity by defendants"). Plaintiff's brevis, two-

sentence argument against Eleventh Amendment immunity as to
NDHOC is devoid of any reference to the existence of a waiver.
(Docket Entry # 39).  Plaintiff makes the exact, same two-
sentence argument, albeit with an introductory sentence, in
opposing MTCD's Eleventh Amendment Immunity argument.  (Docket
Entry # 38).  Here again, she does not mention any waiver but
simply argues that sovereign immunity regarding whether a state
agency is an extension of the state presents a question of fact.
(Docket Entry # 38).  She therefore waived the issue of a
sovereign immunity waiver, a matter upon which she bears the
burden of proof.  See Vallejo v. Santini-Padilla, 607 F.3d 1, 7
& n.4 (1st Cir. 2010) ("[p]laintiffs have not cited a single
authority in support of their assertion that their failure to
timely oppose the motion to dismiss did not constitute waiver"
and noting that "[p]laintiffs did not properly raise their
arguments below"); Coons v. Industrial Knife Co., Inc., 620
F.3d 38, 44 (1st Cir. 2010) ("district court was 'free to
disregard' the state law argument that was not developed in
Coons's brief"); see also Curet-Velazquez v. ACEMLA de Puerto
Rico, Inc., 656 F.3d 47, 54 (1st Cir. 2011) ("[a]rguments alluded
to but not properly developed before a magistrate judge are
deemed waived").  Accordingly, this court declines to address
the existence of a waiver of sovereign immunity as to NDHOC and
MTCD.

MTCD also relies on the Eleventh Amendment bar to dismiss the complaint.  It does not, however, refer to either Rule 12(b)(1) or Rule 12(b)(6).[3]  Viewed under either standard, Eleventh Amendment immunity applies as to MTCD for reasons explained below.

### FACTUAL BACKGROUND[4]

In July of 2009, plaintiff, a resident of Farmington, New Hampshire, was a detainee being held in custody at the Lawrence District Court in Lawrence, Massachusetts, in connection with scheduled court appearances for pending criminal charges. (Docket Entry # 1).  On one of these dates in July 2009, plaintiff was subjected to incidents of non-consensual sexual contact by Martinez, an individual employed by MTCD as a court officer.  (Docket Entry # 1).  One of the incidents, which occurred in an elevator, involved Martinez touching plaintiff's buttocks while plaintiff was handcuffed and shackled.  (Docket Entry # 1).  During another incident, while plaintiff was in a cell, Martinez touched plaintiff inappropriately and entered her vagina with his penis while plaintiff was shackled.  (Docket Entry # 1).

---

[3]  MTCD also raises a number of other arguments appropriately examined under Rule 12(b)(6).
[4]  Unless otherwise noted, the following facts are those set out in the original complaint.  Facts in the proposed amended complaint are identified by reference to "Docket Entry # 53-1."

Later that day, plaintiff was transported to Strafford
County Jail in Dover, New Hampshire, where she was held in
custody for other pending criminal charges.  (Docket Entry # 1).
While at the Strafford County Jail "in 2009," plaintiff reported
the sexual assaults to representatives of NHDOC and SCHOC.
(Docket Entry # 1).  The proposed amended complaint adds the
exact date in 2009, i.e., November 24, 2009, that she reported
the incidents of non-consensual sexual contact by Martinez to
SCHOC representatives.  It also identifies the representatives
by name and title as Brackett, a program counselor at SCHOC, and
Collins, a program administer at SCHOC.  (Docket Entry # 53-1).
After reporting the incidents on November 24, 2009, plaintiff
was not contacted by any representative of NHDOC, SCHOC, MTCD,
or any other government representative of New Hampshire or
Massachusetts.  (Docket Entry # 53-1).

In September and October of 2014, plaintiff was again held
in custody at the Lawrence District Court as a detainee in
connection with scheduled court appearances for pending criminal
charges.  (Docket Entry # 1).  In September 2014, plaintiff was
subjected to incidents of non-consensual contact by Martinez.
(Docket Entry # 1).  One incident, which occurred while
plaintiff was shackled in a cell, involved Martinez slipping his
hands through the metal trap door and groping plaintiff's vagina
over her clothing.  (Docket Entry # 1).  During another

incident, which occurred in a stationary elevator, Martinez
kissed plaintiff, groped her breasts and vagina, entered her
vagina with two fingers, exposed his penis, and attempted to
enter her vaginally with his penis, all while plaintiff was
shackled.  (Docket Entry # 1).  While in a stationary elevator,
Martinez took a photograph or photographs of plaintiff's vagina
with a cell phone.  (Docket Entry # 1).  Prior to this incident,
Martinez had stopped the elevator and removed plaintiff's
handcuffs.  (Docket Entry # 1).

In October 2014, plaintiff was again subjected to incidents
of non-consensual sexual contact by Martinez while at the
Lawrence District Court.  (Docket Entry # 1).  These incidents
occurred when Martinez removed plaintiff from her cell without
handcuffs, though plaintiff was still shackled, and brought her
beneath a stairway in an unoccupied hallway, which was accessed
by passing through a locked, "employees only" door with a swipe
card.  (Docket Entry # 1).  Martinez kissed plaintiff, groped
her beneath her clothing, exposed his penis, and entered her
vaginally with his penis, ejaculating while inside her.  (Docket
Entry # 1).  Prior to entering her vaginally, Martinez removed
one of plaintiff's legs from the shackles.  (Docket Entry # 1).
Plaintiff was later transported to the New Hampshire State
Prison for Women, where she was again held in custody for a
parole violation.  (Docket Entry # 1).

In 2014, while at the New Hampshire State Prison for Women, plaintiff reported the sexual assaults that occurred in 2009 and 2014 to representatives of NHDOC.  (Docket Entry # 1).  As set out in the proposed amended complaint, Martinez was charged with rape in 2014.  (Docket Entry # 53-1).  During the trial in the spring of 2017, Martinez testified and admitted to having sexual contact with plaintiff in 2014 while she was being held in custody at the Lawrence District Court as a detainee.  (Docket Entry # 53-1).

DISCUSSION

I.   SCHOC's Motion to Dismiss

SCHOC moves to dismiss the complaint under Rule 12(b)(6) on a number of grounds including because:  (1) it fails to identify a policy, custom or procedure as the moving force of the acts alleged for a section 1983 claim; and (2) the statute of limitations bars the claims.[5]  (Docket Entry ## 12, 13).  Plaintiff opposes a dismissal.  (Docket Entry # 29).

A.   Policy, Custom, or Procedure

SCHOC argues for dismissal of the section 1983 claims because the complaint does not identify any custom or policy that contributed to the violation of constitutional rights.  (Docket Entry # 13).  Plaintiff maintains that liability exists

_____

[5] Although SCHOC does not refer to Rule 12(b)(6), it cites to Ashcroft v. Iqbal, 556 U.S. 662 (2009).  (Docket Entry # 13).

based on a single decision by a policymaker and that Collins and/or Brackett are policymakers.[6]  (Docket Entry # 29).

Liability under section 1983 is neither vicarious nor based on respondeat superior.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 (1978).  Specifically, "A local government cannot be held liable under § 1983 on a respondeat superior theory."  Id. at 659; see Stile v. United States Marshals Service, Civil No. 15-cv-494-SM, 2016 WL 3571423, at *6 (D.N.H. May 9, 2016) (holding that SCHOC cannot be liable under respondeat superior theory under section 1983), report and recommendation adopted, 2016 WL 3582027 (D.N.H. June 27, 2016); see also Ureña v. Strafford House of Corrections, Civil No. 14-cv-323-LM, 2014 WL 4715796, at *3 (D.N.H. Sept. 22, 2014) (complaint failed to state sufficient facts to support section 1983 claim of municipal liability against SCHOC), report and recommendation adopted, 2016 WL 3582027 (D.N.H. Aug. 31, 2015).

Rather, a plaintiff who brings a section 1983 claim "must show that a municipal 'policy' or 'custom' is the 'moving force behind the constitutional violation.'"  City of Canton v.

---

[6]  As noted previously, the complaint does not identify Collins and Brackett by name whereas the proposed amended complaint identifies them by name and position.  Because the futility standard is equivalent to the Rule 12(b)(6) standard, this court addresses SCHOC's custom and policy argument as it pertains to both the complaint and the proposed amended complaint in this section of the opinion.

Harris, 489 U.S. 378, 385 (1989) (quoting Monell, 436 U.S. at 694); see also Rodriguez v. Municipality of San Juan, 659 F.3d 168, 181 (1st Cir. 2011) ("[l]iability only attaches where the municipality causes the deprivation through 'an official policy or custom'").

Generally, "[a] custom 'must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice.'" Estate of Bennett v. Wainwright, 548 F.3d 155, 177 (1st Cir. 2008) (quoting Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989)). A policy results from "the decisions of the municipality's duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Board of County Commissioners of Bryan County, Okla. v. Brown, 520 U.S. 397, 403-4 (1997) (citing Monell, 436 U.S. at 694). An official policy thus "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011).

In opposing the dismissal, plaintiff correctly posits that a "single decision made by a policy-maker" may give rise to a policy. (Docket Entry # 29). "A single decision by a municipal policymaker constitutes official policy," however, "'only where

the decisionmaker possesses final authority to establish
municipal policy with respect to the action ordered.'" <u>Freeman</u>,
714 F.3d 29, 38 (1st Cir. 2013) (quoting <u>Pembaur v. City of
Cincinnati</u>, 475 U.S. 469, 481 (1986)) (emphasis added). "When
determining whether a decisionmaker exercises final authority,
'[c]ourts must look to state law, including "valid local
ordinances and regulations," for descriptions of the duties and
obligations of putative policymakers in the relevant area at
issue.'" <u>Id.</u> (quoting <u>Walden v. City of Providence</u>, 596 F.3d
38, 56 (1st Cir. 2010), quoting <u>City of St. Louis v. Praprotnik</u>,
485 U.S. 112, 125 (1988)).

 The complaint fails to depict or reasonably infer that the
"representatives" of SCHOC (Docket Entry # 1, ¶ 9), i.e.,
identified as Collins and Beckett in the proposed amended
complaint, held final policymaking authority.  Beyond
generalizations (Docket Entry # 1, ¶¶ 67, 70, 73), the complaint
does not provide any facts regarding the policymaker with the
final authority in the relevant area at issue.  Where, as here,
plaintiff only advances "a 'final authority' theory of municipal
liability," a complaint should at least identify the basis for
the policymaking authority of the individual(s) with the final
authority over the relevant area at issue.  <u>See id.</u>  Like the
complaint subject to a Rule 12(b)(6) dismissal as to the town in
<u>Freeman</u>, 714 F.3d at 38, the complaint "references no state or

local laws establishing the policymaking authority of any individual or group of individuals." Id. (affirming lower court's dismissal of complaint under Monell, 436 U.S. at 691). The proposed amended complaint is similarly deficient. (Docket Entry # 53-1).  Without any reference to state or local law establishing policymaking authority of a program counselor at SHOC or a program administrator at SCHOC, the proposed amended complaint does not set out a plausible basis for municipal liability vis-à-vis SCHOC.  See Freeman, 714 F.3d at 38.

At best, the complaint and the proposed amended complaint list several, general areas in which "defendant and/or its policymakers failed to take steps to remedy the situation." (Docket Entry # 1, ¶¶ 67, 70, 73) (Docket Entry # 53-1, ¶¶ 68, 71, 74).  More specifically, each pleading broadly identifies failures "to follow rules, policies and procedures relating to the reporting of prisoner mistreatment to the proper authorities" or to implement such "rules, policies, and procedures" as well as a failure to train, supervise, and educate employees.  (Docket Entry # 1, ¶¶ 67, 70, 73) (Docket Entry # 53-1, ¶¶ 68, 71, 74).  Even with these assertions, however, the complaint and the proposed amended complaint, which set out a single failure to report an incident by SCHOC

representatives,[7] allege no basis establishing the policymaking authority of a SHOC representative or group of SCHOC representatives in these general areas.   See Freeman, 714 F.3d at 38.  For example, there is no basis to establish that a SCHOC program counselor, SCHOC program administrator, or other SCHOC official had final policymaking authority to enact policies regarding the reporting of prisoner mistreatment occurring outside the confines of SCHOC.  In light of these deficiencies, the section 1983 claims against SCHOC in the complaint are subject to dismissal and in the proposed amended complaint is futile due to the absence of a plausible basis for municipal liability.[8]

B.   Statute of Limitations

---

[7] Municipal liability based on a single incident is permissible in "appropriate circumstances."  Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986); cf. Whitfield v. Melendez-Rivera, 431 F.3d 1, 12 (1st Cir. 2005) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985), and Fabiano v. Hopkins, 352 F.3d 447, 452 (1st Cir. 2003), as examples of cases denying municipal liability for single incidents of misconduct); Bowen v. City of Manchester, 966 F.2d 13, 18 (1st Cir. 1992) ("[i]n the context of pre-trial detention suicides, a municipality will not be liable for failing to maintain a suicide-proof facility or for an isolated, negligent act committed by one of its police officers").

[8]  In the event plaintiff obtains sufficient grounds to set out a plausible basis of municipal liability against SCHOC that are not barred under the applicable statute of limitations, plaintiff may seek leave to amend the complaint within the parameters of any scheduling order.

In the alternative, SCHOC seeks to dismiss the section 1983 claims as untimely.  It also seeks dismissal of the common law negligence claim as untimely.  Plaintiff submits "that she did not experience harm until September and October, 2014 when she was again assaulted by the same perpetrator," Martinez.  (Docket Entry # 29).  She therefore asserts that the claims "did not accrue until late in 2014."  (Docket Entry # 29).

Section 1983 contains no specific statute of limitations. "The silence of Congress has been interpreted to mean that it is federal policy to adopt the local law of limitation" if consistent with federal policy.  Holmberg v. Armbrecht, 327 U.S. 392, 395 (1946); see also Runyon v. McCrary, 427 U.S. 160, 180 (1976).  More specifically, "[b]ecause section 1983 does not have its own statute of limitations . . ., courts use the personal-injury limitations period adopted by the state where the injury supposedly occurred."  Martinez-Rivera v. Commonwealth of Puerto Rico, 812 F.3d 69, 74 (1st Cir. 2016).

Massachusetts is the place where Martinez assaulted plaintiff in July 2009 and New Hampshire is the place where plaintiff reported the assault to SCHOC representatives.  It is nevertheless not necessary to determine which personal injury limitations period applies because they are the same, namely, three years.  See N.H. Rev. Stat. Ann. § 508:4; Mass. Gen. Laws ch. 260, § 2A; Silvestri v. Smith, Civil Action No. 14-13137-

FDS, 2015 WL 1781761, at *7 (D. Mass. Apr. 17, 2015) ("in
Section 1983 actions arising in Massachusetts, the First Circuit
has applied the three-year statute of limitations imposed by
Massachusetts in personal injury actions"); see also N.H. Rev.
Stat. Ann. § 507-B:7 (three-year limitations period applies to
governmental units); Boulanger v. Director, U.S. Bureau of
Prisons, Civil No. 06-cv-308-JD, 2006 WL 3694548, at *7 (D.N.H.
2006) ("Under New Hampshire law, counties, such as Strafford,
are considered local government units").

     As to accrual of the three-year limitations period
applicable to section 1983 claims, federal law determines "when
the limitation clock starts ticking." Martinez-Rivera, 812 F.3d
at 74; Nieves v. McSweeney, 241 F.3d 46, 52 (1st Cir. 2001)
("when a cause of action accrues in a civil rights case is a
matter of federal law"). "Section 1983 claims generally accrue
when the plaintiff knows, or has reason to know of the injury on
which the action is based, and a plaintiff is deemed to know or
have reason to know at the time of the act itself and not at the
point that the harmful consequences are felt." Gorelik v.
Costin, 605 F.3d 118, 122 (1st Cir. 2010) (internal quotations
and citations omitted); accord Morán Vega v. Cruz Burgos, 537
F.3d 14, 20 (1st Cir. 2008) (plaintiff "deemed to know or have
reason to know at the time of the act itself and not at the
point that the harmful consequences are felt"). For example, in

a section 1983 claim against the City of Worcester, the <u>Monell</u>
claim based on use of excessive force during arrest, failure to
train, and "false reporting" accrued and the limitations period
began to run at the time of the arrest.  <u>Watson v. Mita</u>, Civil
Action No. 16-40133-TSH, 2017 WL 4365986, at *2 (D. Mass. Sept.
29, 2017) ("[b]ecause the Plaintiff became aware that his rights
had been violated at the time of his arrest, March 9, 2013, the
limitation period for . . . false reporting, failure to
intervene and the <u>Monell</u> claim against the City accrue on that
date"); <u>see</u> <u>Nieves v. McSweeney</u>, 241 F.3d at 52 (finding "all
claims based on the officers' physical abuse or arrest of the
appellants accrued at the time that those events occurred" and
deeming section 1983 claims against officers and the Town of
Ayer time barred).

    As stated in the complaint, plaintiff reported the sexual
assaults by Martinez to SCHOC representatives in 2009 (Docket
Entry # 1) and, as further specified in the proposed amended
complaint, on November 24, 2009 (Docket Entry # 53-1).
Plaintiff therefore knew about the sexual assault in July 2009
and reported it to two SCHOC officials in November 2009.  She
did not, however, file this action until August 2017.  (Docket
Entry # 1).  She knew of the assault in July 2009 and had reason
to know of the SCHOC representatives' failure to report the
assault well before August 2014.

Tolling rules do not salvage the section 1983 claims.  Like the borrowing of the limitations period, section 1983 "borrows a state's coordinate rules on tolling unless they are inconsistent with the federal Constitution and law, or with the federal policy underlying § 1983."  Lopez-Gonzalez v. Municipality of Comerio, 404 F.3d 548, 552 (1st Cir. 2005).

In Massachusetts, the discovery rule tolls the statute of limitations "in three circumstances:  where a misrepresentation concerns a fact that was 'inherently unknowable' to the injured party, where a wrongdoer breached some duty of disclosure, or where a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive."  Albrecht v. Clifford, 67 N.E.2d 42, 49 (Mass. 2002); accord Creative Playthings Franchising, Corp. v. Reiser, 978 N.E.2d 765, 770 (Mass. 2012).  As to an inherently unknowable injury and absent actual knowledge, "[t]he factual basis for a cause of action is inherently unknowable if it is incapable of detection by the wronged party through the exercise of reasonable diligence."  Geo. Knight & Company, Inc. v. Watson Wyatt & Company, 170 F.3d 210, 213 (1st Cir. 1999) (internal quotation marks omitted).  "In order for a cause of action to accrue under the discovery rule, it is only necessary that the plaintiff know about the injury and know that the injury was caused by the defendant."  Cigna Insurance Company v. Oy Saunatec, Limited,

241 F.3d 1, 10 n.6 (1st Cir. 2001).  Viewing the injury as the
SCHOC representatives' failure to report the mistreatment
plaintiff described to them in November 2009, the complaint and
the proposed amended complaint fail to provide any facts that
the failure caused by SCHOC representatives to report the
misconduct to proper authorities during the almost five-year
period from November 2009 to August 2014 was incapable of
detection by plaintiff through the exercise of reasonable
diligence.[9]  An almost five-year time period during which no SHOC
or other government official contacted plaintiff is too long a
period of time to reasonably assume the matter was reported.

    In New Hampshire, "the limitations period is tolled until
the plaintiff discovers, or reasonably should have discovered,
the injury and its causal connection to the negligent or
wrongful act."  Ornelas v. City of Manchester, Civil No. 14-cv-
394-LM, 2017 WL 2423512, at *3 (D.N.H. June 5, 2017) (citing
Lamprey v. Britton Const., Inc., 163 N.H. 252, 256–57 (2012)).
"'[A] plaintiff need not be certain of this causal connection;
the possibility that it existed will suffice to obviate the
protections of the discovery rule.'"  Id. (quoting Beane v. Dana
S. Beane & Co., P.C., 160 N.H. 708, 713 (2010)).  Similar

---

[9]  Because plaintiff filed this action on August 31, 2017, the
three-year limitations period renders a complaint timely filed
on or after August 31, 2014.

reasons that render reliance on the Massachusetts discovery rule
misguided render reliance on the New Hampshire discovery rule
equally misguided.

The timeliness of the common law negligence claim against
SCHOC fares no better.  As explained above, the complaint and
the proposed amended complaint fail to provide facts to warrant
application of the Massachusetts or the New Hampshire discovery
rule as a means to forestall the running of the applicable
three-year limitations period for almost five years until on or
after August 31, 2014.

In sum, the section 1983 and negligence claims are untimely
as to SCHOC.  Finally, neither the complaint nor the proposed
amended complaint set out facts connecting SCHOC to the 2014
incidents.[10]

II.  MTCD's Motion to Dismiss

MTCD first moves to dismiss the section 1983 claims because
it is not a "person" under section 1983.  (Docket Entry # 19).
Plaintiff submits that she "clearly alleged a Monell styled
civil rights claim" by alleging that the damages she suffered
resulted from a rule or policy of the MTCD or "from a decision
by a policymaker."  (Docket Entry # 38).  Second, MTCD
maintains it is entitled to Eleventh Amendment immunity as to

---

[10]  It is, therefore, not necessary to address SCHOC's remaining
arguments to dismiss the claims.  See footnote eight.

23

the section 1983 and the negligence claims.  Plaintiff responds
that whether the MTCA is "an extension of the state" entitled to
sovereign immunity presents an issue of fact.  (Docket Entry #
38).

Turning to MTCD's first argument, under the language of
section 1983, any person, acting under color of state law, who
subjects "any citizen of the United States . . . to the
deprivation of any rights, privileges, or immunities secured by
the Constitution and laws, shall be liable to the party
injured."  42 U.S.C. § 1983.  The First Circuit in Brown v.
Newberger, 291 F.3d 89 (1st Cir. 2002), unequivocally held that
the "Trial Court of Massachusetts" as well as the Massachusetts
Department of Social Services were not "persons" within the
meaning of section 1983.  Id. at 92 (section 1983 claims against
Trial Court of Massachusetts "fail because a state and its
agencies are not 'persons'") (citing Will v. Mich. Dep't of
State Police, 491 U.S. 58, 71 (1989)).  Accordingly, MTCD, as a
state agency, is not a "person" within the meaning of section
1983.  See id.

Plaintiff nevertheless argues that Monell authorizes the
section 1983 claims against government entities such as MTCD.
(Docket Entry # 38).  Elucidating the import of Monell, the
Supreme Court in Will explains that, whereas municipalities are
"persons" within the meaning of section 1983, it does not follow

24

that states are also "persons" under section 1983.  Will, 491

U.S. at 70 ("it does not follow that if municipalities are

persons then so are States").  States and arms of the state "are

protected by the Eleventh Amendment while municipalities are

not."  Id. (citing Monell, 436 U.S. at 690, n.54).  The Supreme

Court therefore limited the Monell holding "to local government

units which are not considered part of the State for Eleventh

Amendment purposes."  Id.  The section 1983 claims against MTCD

are therefore subject to dismissal because MCTD is not a

"person" within the meaning of section 1983.

MTCD additionally seeks to dismiss the section 1983 and

negligence claims based on its Eleventh Amendment immunity.  In

a two-sentence argument, plaintiff submits the issue presents a

question of fact.[11]

Here again, the First Circuit in Whalen v. Massachusetts

Trial Court, 397 F.3d 19 (1st Cir. 2005), unequivocally holds

that "the Eleventh Amendment bars monetary awards against the

Massachusetts Trial Court itself."[12]  Id. at 28-30 (affirming

dismissal of section 1983 claim due, in part, to Eleventh

Amendment immunity); see Newberger, 291 F.3d at 92; Leslie v.

---

[11]  As previously explained, plaintiff waived the issue of
whether MTCD waived sovereign immunity and this court therefore
declines to address it.
[12]  The complaint seeks monetary relief rather than injunctive
relief.

Superior Court of Massachusetts, Civil Action No. 17-12384-IT,
2017 WL 6757546, at *2 (D. Mass. Dec. 22, 2017); Littler v.
Massachusetts, Civil Action No. 17-11277-RGS, 2017 WL 3495173,
at *4 (D. Mass. Aug. 14, 2017) ("Courts of the Commonwealth, as
instrumentalities of the State, are not subject to suit under §
1983, in light of their sovereign immunity" under "Eleventh
Amendment").  In light of the foregoing precedent, an extensive
analysis is not necessary.

     Briefly stated, "[T]he state itself and 'arms' of the state
receive immunity," whereas "political subdivisions of a state,
such as municipalities and counties, do not lie within the
Eleventh Amendment's reach."  Metcalf & Eddy, Inc. v. Puerto
Rico Aqueduct and Sewer Authority, 991 F.2d 935, 939 (1993).[13]
Subject to certain exceptions including waiver and Congressional
override, see Town of Barnstable v. O'Connor, 786 F.3d 130, 138
(1st Cir. 2015), "the Eleventh Amendment prohibits federal
courts from entertaining suits by private parties against States
and their agencies."  Alabama v. Pugh, 438 U.S. 781, 781 (1978);
Fresenius Med. Care Cardiovascular Resources, Inc. v. Puerto
Rico and Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 63
(1st Cir. 2003) (Eleventh "Amendment restricts the jurisdiction
of the federal courts to hear private claims based on federal

---

[13]  Plaintiff's reliance on Metcalf is misplaced for the reasons
explained by MTCD in its reply brief.  (Docket Entry # 44).

causes of action created by the Congress"); see Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) (unless a state has "waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its own name regardless of the relief sought"); Littler v. Massachusetts, 2017 WL 3495173, at *4 (paraphrasing Quern v. Jordan, 440 U.S. 332, 344 (1979), that "Congress did not override state's Eleventh Amendment immunity in enacting § 1983"). The section 1983 claims against MTCD are therefore subject to dismissal.

Turning to the negligence claim, the Eleventh Amendment ensures "that nonconsenting States may not be sued by private individuals in federal court." Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 363 (2001); see also Poirier v. Mass. Dep't of Corr., 558 F.3d 92, 97 (1st Cir. 2009) (quoting Kentucky v. Graham, 473 U.S. at 167 n.14). Furthermore, the Eleventh Amendment bar "'applies as well to state law claims brought into federal court under pendent jurisdiction.'" Lopez v. Mass., 588 F.3d 69, 73 n.1 (1st Cir. 2009) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984)). Like the section 1983 claims, the negligence claim is therefore subject to dismissal under the Eleventh Amendment immunity.

III.   NHDOC's Motion to Dismiss

Similar to MTCD's arguments, NHDOC moves to dismiss the complaint because it is not a "person" for purposes of the section 1983 claims and it contends that it is entitled to Eleventh Amendment immunity as to the section 1983 and negligence claims.  (Docket Entry # 16).  Plaintiff disagrees. (Docket Entry # 39).

Analyzing the first argument and as previously explained, "neither a State nor its officials acting in their official capacities are 'persons' under [section] 1983."  Will, 491 U.S. at 71; see also Newberger, 291 F.3d at 92 ("a state and its agencies are not 'persons'" within the meaning of section 1983). As explained below, NHDOC is a state agency closely related to the state of New Hampshire.  As such, it is not subject to suit under section 1983 because it is not a "person" within the meaning of the statute.  See Will, 491 U.S. at 71; see also Newberger, 291 F.3d at 92.  The section 1983 claims against NHDOC are therefore subject to dismissal.

Turning to the second argument and similar to MTCD, NHDOC seeks to dismiss the complaint because it is entitled to immunity under the Eleventh Amendment.  Here again, "The Supreme Court has clearly said that the Eleventh Amendment bars federal suits by citizens against the state or state agencies."  O'Neill v. Baker, 210 F.3d 41, 47 (1st Cir. 2000).  "Unless a State has waived its Eleventh Amendment immunity or Congress has

overridden it, . . . a State cannot be sued directly in its own
name regardless of the relief sought." Graham, 473 U.S. at 167
n.14 (citing Alabama v. Pugh, 438 U.S. at 98); see also Va.
Office for Protection & Advocacy v. Stewart, 131 U.S. 1632,
1637-38 (2011) (in absence of abrogation, consent, or waiver,
Eleventh Amendment bars suit against states and their agencies
regardless of form of relief sought).

In determining whether an entity is an arm of the state, a
"'two-step analysis'" applies. Grajales v. Puerto Rico Ports
Authority, 831 F.3d 11, 17 (1st Cir. 2016) (quoting Fresenius,
322 F.3d at 65). The first step "'pays deference to the state's
dignitary interest in extending or withholding Eleventh
Amendment immunity from an entity' by examining 'how the state
has structured the entity.'" Id. (quoting Fresenius, 322 F.3d
at 65). A "broad range of structural indicators" are relevant.
Id. These "include how state law characterizes the entity, the
nature of the functions performed by the entity, the entity's
overall fiscal relationship to the" state "(as opposed to
whether the [state] is liable for any judgment in the particular
case at hand), and how much control the state exercises over the
operations of the entity." Id. at 18. In the event "the
analysis of these structural indicators reveals that 'the state
clearly structured the entity to share its sovereignty,' then
the entity is an arm of the state and the analysis is at an

end." Id. (quoting Fresenius, 322 F.3d at 68); see Fresenius,
322 F.3d at 68-72 (examining a number of relevant structural
indicators).

Turning to the task, the enabling act expressly designates
NHDOC as "an agency of the state" as opposed to a separate
corporation. N.H. Rev. Stat. Ann. § 21-H:3 (it is "hereby
established a department of corrections, an agency of the
state"); see U.S. v. U. of Massachusetts, Worcester, 812 F.3d at
40 (noting that "University is not separately incorporated but,
rather, is simply 'a public institution of higher learning
within the system of public higher education'"). The Governor
appoints the Commissioner of NDHOC. N.H. Rev. Stat. Ann. § 21-
H:6 ("commissioner of the department shall be appointed by the
governor, with the consent of the council"); see U.S. v.
University of Massachusetts, Worcester, 812 F.3d at 40
(governor's appointment of 16 of 19 members of university's
board of trustees exhibited arm-of-state status). Furthermore,
the Commissioner "is directly responsible to the governor," N.H.
Rev. Stat. Ann. § 21-H:2, and required to "report directly to
the governor." N.H. Rev. Stat. Ann. § 21-H:8. The purpose of
the statute that created NHDOC is, inter alia, "to improve the
administration of state government." N.H. Rev. Stat. Ann. § 21-
H:1; Grajales, 831 F.3d at 23 (agency "charged with promoting
'the general welfare'" and increasing commerce for "benefit of

the people" suggests arm-of-state status).  The Commissioner

must submit an annual plan for NHDOC to the governor and

legislative leaders.  N.H. Rev. Stat. Ann. § 21-H:8.  He also

has the power to adopt rules for NHDOC and enter into contracts

with "the state's counties" and other entities.  N.H. Rev. Stat.

Ann. § 21-H:8.

Notably the state of New Hampshire has a legal obligation

to satisfy personal injury and property damage claims against

NHDOC out of the state treasury.  N.H. Rev. Stat. Ann. 541-B:13;

see N.H. Rev. Stat. Ann. 541-B:1.  In particular, when a final

decision or judgment by the New Hampshire Board of Claims or New

Hampshire Superior Court exceeds $500 against NHDOC, "the

governor shall draw his warrant for said payment out of any

money in the treasury not otherwise appropriated."  N.H. Rev.

Stat. Ann. 541-B:13; see N.H. Rev. Stat. Ann. 541-B:1, 541-

B:9(V).  Because these structural indicators uniformly favor a

conclusion that NHDOC is an arm of the state, "the analysis is

at an end."  Grajales, 831 F.3d at 18.

As previously explained, the Eleventh Amendment bar also

"'applies as well to state law claims brought into federal court

under pendent jurisdiction.'"  Lopez v. Mass., 588 F.3d at 73

n.1 (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S.

at 121).  "States and their agencies are entitled to sovereign

immunity 'regardless of the relief sought.'"  Poirier v.

Massachusetts Dept. of Correction, 558 F.3d at 97 (quoting
Kentucky v. Graham, 473 U.S. at 167 n.14; see Pennhurst State
Sch. & Hosp. v. Halderman, 465 U.S. at 100 ("jurisdictional bar
applies regardless of the nature of the relief sought").  As
previously stated, this court declines to address any waiver of
sovereign immunity because plaintiff, who bears the burden to
show a waiver, does not raise the issue in her two-sentence
opposition to the Eleventh Amendment argument.

In sum, NHDOC is an arm of the state entitled to Eleventh
Amendment immunity as to the section 1983 and negligence claims.
See, e.g., Nabatanzi v. N.H. Dep't of Corr., 2000 WL 1745088
(D.N.H. Aug. 25, 2000) (plaintiff failed to state a section 1983
claim against NHDOC due to state's Eleventh Amendment
immunity).[14]

IV.  Motion to Amend Complaint

Plaintiff seeks to amend the complaint to add factual
detail without changing the causes of action pled.  (Docket
Entry # 53).  Defendants argue that the proposed amendment is
futile.  (Docket Entry ## 54, 55, 57).

"'Futility' means that the complaint as amended, would fail
to state a claim upon which relief could be granted."
Computervision Corp., 90 F.3d at 623.  "In assessing futility,

---

[14]  It is, therefore, not necessary to address NHDOC's remaining
arguments in favor of a dismissal.

the district court must apply the standard which applies to motions to dismiss under Rule 12(b)(6)." Crowley Towing & Transp. Co., 443 F.3d at 126.  If a defendant is entitled to immunity under the Eleventh Amendment, a plaintiff's motion to amend is without merit.  See Jaundoo v. Clarke, 690 F. Supp. 2d 20, 29 (D. Mass. 2010) (motion to amend complaint denied without prejudice to "plaintiff's right to proceed in state court" in light of defendant's entitlement to Eleventh Amendment immunity); see also Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 16 (1st Cir. 2001) ("amendment would be futile because the qualified immunity of the prospective defendant would render nugatory the proposed amended complaint").

In Roman numeral I, this court already deemed the amendment futile as to SCHOC.  MTCD and NHDOC correctly note that the proposed amended complaint remains futile because both entities are afforded immunity under the Eleventh Amendment and, as to the section 1983 claims, neither entity is a "person" within the meaning of section 1983.  (Docket Entry ## 54, 55). Accordingly, the proposed amendment, which includes the section 1983 and negligence claims against SCHOC, MTCD, and NHDOC, is futile as to these defendants and therefore denied.

That said, the proposed amended complaint only adds certain facts to the complaint rather than add or omit causes of action.

33

Plaintiff may therefore seek leave to amend the complaint to include these additional facts against the remaining defendant, Martinez.  Accordingly, the denial of the motion to amend is without prejudice.

CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[15] defendants' motions to dismiss (Docket Entry ## 12, 16, 18) be **ALLOWED** to the extent of dismissing the section 1983 and negligence claims against defendants.  The motion to amend (Docket Entry # 53) is **DENIED** without prejudice.  This court will conduct a scheduling conference on August 7, 2018, at 2:00 p.m.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[15]  Any objection to this Report and Recommendation or Memorandum and Order must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation and Memorandum and Order to which objection is made and the basis for such objection.  See Fed. R. Civ. P. 72(b).  Any party may respond to another party's objection within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.